SPENCER ERVIN AND OTHERS, APPELLANTS, *v.* THE OREGON RAILWAY AND NAVIGATION COMPANY AND OTHERS, RESPONDENTS.

*Corporation — right of one obtaining a transfer of its stock, for the purpose of suing it, to maintain the suit.*

In this action, brought by certain stockholders of a foreign corporation, in behalf of themselves and all others who might join, to set aside certain sales alleged to have been corruptly made by the corporation, all of the plaintiffs but one were non-residents. It appeared that the one resident plaintiff, Giffin, was a clerk in a broker's office and acquired his stock on the day the action was commenced. One Weaver, one of the plaintiffs, on that day suggested that Giffin should become a stockholder that he might join in the action; Weaver then deposited with the brokers $600 to Giffin's credit; Giffin then drew his check for $600 to the order of Weaver, and received from him a certificate for ten shares of the stock, indorsed in blank, which then stood, and which continued to stand, on the books of the company in the name of a person not a party to the action. Before this purchase Giffin was a stranger to the company and had no wrong to redress or injury to complain of. The court below dismissed the complaint as to him upon the ground that he was a mere nominal plaintiff seeking to invoke the aid of the court to enforce imaginary rights.

*Held*, that this was error; that Giffin held the legal title to the stock and was entitled to maintain the action.

(DAVIS, P. J., dissenting on the ground that the transfer of the stock, under the circumstances stated, carried no title to Giffin.)

APPEAL from a judgment dismissing the complaint, entered upon the trial of this action at a Special Term.

The action was brought by eight stockholders of the Oregon Steam Navigation Company, in behalf of themselves and all other stockholders similarly situated and who might come in and contribute to the expense thereof, to set aside acts and transfers done or made by the said company as corrupt and fraudulent as to the stockholders. All of the plaintiffs, except Giffin, were non-residents of this State and resided in Pennsylvania.

*Thomas H. Hubbard,* for the appellants.

*Artemas H. Holmes,* for the respondents.

BRADY, J.:

The complaint in this case was dismissed solely upon the ground that there was a defect in the plaintiff's title; that he had paid nothing for his stock and that he was not a real and *bona fide* litigant. And this view rests upon the conceded fact that the plaintiff took his stock for the purpose of joining in this action, and for the purpose of aiding other plaintiffs, should the circumstance of their being non-residents of the State require it.

It appears that the plaintiff Giffin is a resident of the State, and that on the day this action was commenced, namely, May 8, 1880, he was a clerk in the employment of Day & Heaton, stock brokers in this city. It was suggested by Weaver, one of the plaintiffs, that Giffin should become a stockholder of the Oregon Steam Navigation Company for the purpose of joining as plaintiff herein, and he became a stockholder of ten shares in the following manner: Six hundred dollars was deposited by Weaver with Day & Heaton to Giffin's credit on the day named, and Giffin forthwith drew a check on Day & Heaton for $600 to the order of Weaver, who thereupon handed Giffin a certificate of ten shares of the stock indorsed in blank. Before this incident Giffin was a stranger to both defendant companies, and, therefore, had no wrong to redress and no injury of which to complain, and had sustained no damage from the company.

It also appeared that Giffin never essayed to transfer the certificate for the shares, which still stand in the name of Webster, who is not a party to the suit.

The learned judge in the court below said: "The man who sells the stock gives to this plaintiff the money with which it was purchased. It brings him into the condition of being a mere nominal plaintiff and a volunteer, for the purpose of invoking the aid of this court to enforce really an imaginary right, and to redress some wrong which he really has not personally sustained."

In a former review of some of the questions in this case, the report of which will be found in 28 Hun, 269, it was substantially held that this action might be maintained at the instance of a resident plaintiff; and it was declared in that case that there was no doubt that a claim against a foreign corporation by a non-resident could be assigned to a resident of this State for the purpose of enabling him to sue, and thus to avoid the disability which would otherwise exist. And this principle has been reasserted in cases subsequent to those cited as justifying that conclusion in the opinion delivered.

In the case of *Sheridan* v. *The Mayor* (68 N. Y., 30), the court held that the plaintiff was the real party in interest under the Code, if he had a valid transfer, as against the assignor, and held the legal title to the demand; and further, that the defendant had no legal interest to inquire further. And this was founded upon the proposition that a payment to or recovery by the assignee occupying this position was a protection to the defendant against any claim that might be made by the assignor; and that an inquiry as to the *bona fides* of the transfer might become material if the rights of creditors were involved, or upon the right of interposing some defense or counter-claim against the assignor. And in the case of *Morris* v. *Tuthill* (72 N. Y., 575), it was held that the facts that the assignor of a mortgage and his assignee acted in concert, with a view unnecessarily to harass and oppress the mortgagor and with intent to prevent payment, to the end that the equity of redemption might be foreclosed and they become purchasers for less than its value, did not constitute a defense to an action to foreclose the mortgage; nor did the fact that the assignee took title from motives of malice, and solely with a view of bringing an action, and that the assignor from the like motive transferred without consideration, furnish any defense, and it did not impeach plaintiffs' title. (See, also, *Stone* v. *Frost*, 61 N. Y., 614; *Allen* v.

*Brown*, 44 id., 228.)    The English Courts of Chancery appear to
have established the rule that the owner of stock may maintain a
bill and obtain an injunction, although he buy his stock to enable
him to file the bill, and at the solicitation of holders of the same
kind of stock; provided, however, that he shall not be acting in
the interest of a rival to the defendant corporation, or be indemnified
so that he incurs no risk or responsibility in bringing the suit.
(*Bloxam* v. *Metropolitan Railway Co.*, L. R., 3 Ch. App., 337,
343, 353; *Seaton* v. *Grant*, L. R., 2 Ch. App., 459; *Filder* v.
*London, B. and S. C. Ry. Co.*, 1 Hemming & Miller, 493;
*Forrest* v. *Manchester Ry. Co.*, 4 De Gex, F. & G., 126.)

For these reasons it is thought that the learned justice in the
court below erred in dismissing the complaint upon the ground
stated, and that the resident plaintiff, being *rectus in curia*, has a
cause of action entitled to consideration.

The judgment should therefore be reversed and a new trial
ordered, with costs to abide the event.

DANIELS, J., concurred.

DAVIS, P. J. (dissenting):

My dissent is based upon what I consider to be the fact — that
plaintiff Giffin bought no stock and took no title to any.  A broker,
who seems to have been interested in having the suit brought,
handed to Giffin a sum of money, not Giffin's but his own, and
then handed Giffin a certificate of stock and takes back his own
money, the stock standing in his own name and no transfer ever
having been made to Giffin on the books of the company.

The court was right in holding that this transaction carried no
title to the stock to Giffin.

It was a fraud on the law, designed to produce a shadow of title
where there was in fact no substance.   I am for affirmance of the
judgment.

Judgment reversed, new trial granted, costs to abide event.